**Anna HAUPTMANN, etc., Plaintiff,**

v.

**David T. WILENTZ, et al., Defendants.**

**Civ. No. 81–3177.**

United States District Court,
D. New Jersey.

July 23, 1982.

---

Robert R. Bryan, Mill Valley, Cal., Steven Vosbikian (local counsel), Haddonfield, N.J., for plaintiff.

Eugene J. Sullivan, Asst. Atty. Gen., State of New Jersey, Trenton, N.J., William B. McGuire, Lum, Biunno & Tompkins, Newark, N.J., Ronald S. Diana, Gen. Counsel, The Hearst Corp., New York City, Gordon Deiger, Dept. of Justice, Washington, D.C., for defendants.

OPINION

LACEY, District Judge.

Plaintiff has moved for my recusal under 28 U.S.C. § 455. The motion is grounded upon an alleged appearance of impropriety and bias due to my prior associations with Harold Fisher, Esq., a partner in the law firm of Shanley & Fisher, Newark, New Jersey, and Ronald S. Diana, Esq., counsel for the defendant The Hearst Corporation and a former associate attorney at Shanley & Fisher. In support of the motion plaintiff has filed the certification of her attorney, Robert R. Bryan, Esq., as well as her own certification and affidavit. The grounds urged are as follows.

Plaintiff states that I was formerly a member of the law firm of Shanley & Fisher. Additionally, plaintiff asserts that Mr. Fisher actively participated in the prosecution of plaintiff's late husband, Richard Hauptmann, in 1934 through 1935. It is contended by plaintiff that Mr. Fisher helped draft the indictment, was present throughout the trial, conducted research during the prosecution and participated in writing the State's appellate brief. Such activity, plaintiff submits, "relates directly to the very nucleus of the present action." Motion of Plaintiff for Disqualification, filed July 12, 1982, at ¶ 2.

As for Mr. Diana, plaintiff contends that he was employed by the Shanley & Fisher firm from 1958 until 1960 and that during that period he worked on various matters under my direction.

Plaintiff's motion contains another aspect. Plaintiff contends that because this case is

> recognized as the 'Trial of the Century' and was the largest and most notorious trial in the history of New Jersey, [v]irtually no judge in New Jersey is without at least the appearance of prejudice, if not actual bias, due to the significance of the case. It is believed, based upon information secured through a continuing investigation, that it is very doubtful a judge can be selected from within New Jersey without the appearance of impropriety. It has been ascertained that due to the tremendous notoriety of the case ... few members of the New Jersey legal community in positions of authority have not had close association with various individuals involved in the prosecution of the Hauptmann case.

Motion of Plaintiff for Disqualification, filed July 12, 1982, at ¶ 5.

Based upon the foregoing, plaintiff claims that an appearance of impropriety exists if I continue to preside over this matter.

28 U.S.C. § 455 provides in pertinent part as follows:

> (a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

> . . . .

> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served *during such association* as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it. . . .

28 U.S.C. § 455 (Cum.Supp.1982) (emphasis added). Section 455(a) establishes a general standard for disqualification and Section 455(b)(2) contains a specific instance which mandates disqualification. *In Re: International Business Machines,* 618 F.2d 923, 927–28 (2d Cir.1980); Tilewick, Decisions Construing the Judicial Disqualification Statute, Federal Judicial Center Staff Paper, November 1977, at 4.

As a result of this court's prior association with Messrs. Fisher and Diana, plaintiff states, this court's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Prior to 1974, a judge was required to disqualify himself if he believed, in his own opinion, that it was improper to preside over the matter. This subjective test was changed in 1974 when the focus of § 455 was changed to an objective standard. *See Roberts v. Bailar,* 625 F.2d 125, 128–29 (6th Cir.1980). Thus, the standard now employed is

> whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

*United States v. Cowden,* 545 F.2d 257, 265 (1st Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). *See United States v. Martorano,* 620 F.2d 912 (1st Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980). Phrased another way, the standard "asks what a reasona-

ble person knowing all the relevant facts would think about the impartiality of the judge." *Roberts v. Bailar, supra,* 625 F.2d at 129.

■ This general standard contained in § 455(a) is not intended to be an invitation for judges to freely disqualify themselves whenever their impartiality is questioned on any ground. Testimony on this issue was given at the hearings before the House Subcommittee on the bill which became the new Section 455 and is reflective of the legislators' intent:

> Prof. Thode. [T]he longer the judge is on the bench, the less the likelihood that the general standard [of Canon 3(c)(1), which became 28 U.S.C. § 455(a)] will require his disqualification because of his former association [as former partner or former associate with a lawyer appearing before him].

Hearing on S. 1064 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 93rd Cong., 1st Sess. 100 (1973) (remarks of Professor E. Wayne Thode, reporter for the ABA Committee on Standards of Judicial Conduct). Similarly, with regard to the general standard, John P. Frank, Esq., rendered the following testimony:

> Mr. Frank. I want to make loud and clear for purposes of this record, because I assume that this record may have importance for many, many years in the future, that this does not mean that judges are going to be casually getting off the bench or that somebody can march into a judge and say, 'Well, I just don't feel comfortable with you. I wish you would go away. I question your impartiality.' This is not to happen at all.
> ... The judge, unless his impartiality may reasonably be questioned in terms of common traditions of what is a reasonable doubt, does have a duty to sit.

Hearings on S. 1064 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 93rd Cong., 2d Sess. 14–15 (1974) (remarks of John P. Frank, Esq.,

Phoenix, Arizona, author of *Disqualification of Judges: In Support of the Bayh Bill,* 35 Law & Contemp. Prob. 43 (1970); *Disqualification of Judges,* 56 Yale L.J. 605 (1949); *Commentary on Disqualification of Judges,* 1972 Utah L.Rev. 377).

For purposes of this motion, I accept the factual averments contained in the certifications and affidavit as true. However,

> [t]he mere filing of an affidavit of prejudice does not require a judge to recuse himself. On the contrary, ... a judge has an affirmative duty to inquire into the legal sufficiency of such an affidavit and not to disqualify himself unnecessarily, particularly 'where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.

*National Auto Brokers v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979) (quoting *Rosen v. Sugarman,* 357 F.2d 794, 797–98 (2d Cir.1966)).

By way of example, in *National Auto Brokers, supra,* plaintiff moved for the disqualification of the trial judge five weeks into trial. There the district court judge had formerly been a member of the large firm which represented the defendant in the litigation before him. That firm had represented the defendant, during the time the judge was associated with the firm, on matters wholly unrelated to the case before him. That prior representation of a party did not require automatic recusal. The United States Court of Appeals for the Second Circuit found that not only were the motion and affidavit untimely and insufficient, but they did not indicate that the trial judge's actions in the case before him were the "result of improper extrajudicial bias." 572 F.2d at 958. Moreover, the court observed that the trial judge's former association with the law firm had been a matter of public knowledge for years.

Judge Davis of the Eastern District of Pennsylvania was also confronted with a disqualification motion under § 455 in *Bumpus v. Uniroyal Tire Co. Division of*

*Uniroyal, Inc.,* 385 F.Supp. 711 (E.D.Pa. 1974) because he had been a law partner of plaintiff's counsel eleven years before. Judge Davis concluded that "[t]he mere fact that [he] was more than a decade [before] a law partner of an attorney who later appear[ed] before him [was] patently insufficient to require disqualification." 385 F.Supp. at 714. Moreover, the court found that such an allegation could set a dangerous precedent to every member of the federal judiciary in that "[j]udges would have to recuse themselves in every case in which a litigant could point to the single fact of a prior association with a party or his attorney." *Id.*

As I stated on the return day of the motion, July 19, 1982, the affidavit is incomplete. It fails to note the following:

1) I did not become associated with Harold Fisher and Shanley & Fisher until 1955, approximately twenty years after the *Hauptmann* proceedings concluded;

2) I have not been associated with Shanley & Fisher since September 1969;

3) Regarding Ronald Diana, Esq., in February 1982 I brought to the attention of all counsel that Mr. Diana had been an associate at Shanley & Fisher when I was a partner, approximately twenty years ago. No party has raised until now that this association requires my recusal.

The complaint in this action was filed on October 14, 1981. Numerous motions, applications and conferences have been entertained by this court. Additionally, I have now read the original appellate appendices and memoranda of law, and briefs, affidavits and materials submitted for *in camera* inspection, on motions presently before me. The extent of the activity in this case to date is reflected by the docket sheets of this case, attached as Exhibit 1 hereto.

■ In summary, I see no basis under § 455 for recusing myself. My former partner, Mr. Fisher, was 20 years removed from the Hauptmann proceedings when I first became associated with him; and my association with him terminated 13 years ago. Certainly, it would not be reasonable to doubt this court's impartiality based upon these facts.

As to Mr. Diana's former employment at Shanley & Fisher, again, there is no basis for recusal, even had I not raised the matter several months ago.

Accordingly, under both the specific standard of § 455(b)(2) and the general standard of § 455(a), the motion for my recusal is denied.

■ Also denied is plaintiff's motion that I petition the Court of Appeals for the Third Circuit to appoint a judge out of this district to preside over this matter. As I stated on the return date, counsel obviously misapprehends the nature of this case and its history. Even the more senior of the active judges were in their pre-teen or early teen years when the events in suit took place. This aspect of the motion requires, moreover, that plaintiff's counsel be once again admonished that he can hardly claim that this case, reviving a matter now fifty years in the past, is exciting such intense public interest that no judge in this district is free from constraints which would enable him or her to sit, when it is plaintiff's counsel himself who is generating the publicity surrounding it. In addition to statements and interviews he has given the various media, which I had previously noted in court, he arranged for his client and himself to be interviewed by a TV cameraman outside the courthouse on the return day of this motion, July 19, 1982, a subject covered by me in court shortly thereafter. On July 19 I noted once again that I was not going to impose a "gag order" on the parties and stated that if counsel intended to use the case to advance his own image publicly, I was not going to stop him. However, in his explanation of how innocently this TV interview came about, counsel did not advise opposing counsel and me that in the evening of July 19, 1982, he and his 83-year-old client, Mrs. Hauptmann, would appear at a press conference-interview at a New York hotel. This interview was televised on Channel 11, a New York television station.

This latter information was imparted to me by a member of my staff who saw the program and my knowledge thereof is, by a copy of this opinion, being conveyed to all counsel.

In view of the continued utilization of the media by plaintiff's counsel, I now reluctantly suggest to him that he seriously consider curtailing his public relations activity in this case. I make this suggestion out of concern for the rights of the defendants herein. In any event, however, to the extent this case is developing media interest, it is a development to which plaintiff's counsel is making a substantial contribution. *Cf.* DR 7–107, ABA Code of Professional Responsibility, adopted by Local Rule 6 of this court.